JAMES R. OLSON, ESQ.
Nevada Bar No. 000116
MICHAEL E. STOBERSKI, ESQ.
Nevada Bar No. 004762
OLSON, CANNON, GORMLEY & DESRUISSEAUX
9950 W. Cheyenne Avenue
Las Vegas NV 89129
Tel. (702) 384-4012

*Attorneys for Defendants SICOR, INC., TEVA PARENTERAL MEDICINES, INC., formerly known as SICOR PHARMACEUTICALS, INC., MCKESSON MEDICAL-SURGICAL INC., and BAXTER HEALTHCARE CORP.*

U. GWYN WILLIAMS, ESQ. (Pro Hac Vice)
GOODWIN PROCTER LLP
Exchange Place
Boston MA  02109
Tel. (617) 570-1000
Fax (617) 523-1231

*Attorneys for Defendants SICOR, INC., TEVA PARENTERAL MEDICINES, INC., formerly known as SICOR PHARMACEUTICALS, INC., and MCKESSON MEDICAL-SURGICAL INC.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES ANTHONY RADER, JR., Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PARENTERAL MEDICINES, INC., formerly known as SICOR PHARMACEUTICALS, INC.; SICOR, Inc., a Delaware Corporation; BAXTER HEALTHCARE CORPORATION; MCKESSON MEDICAL-SURGICAL INC., a Delaware Corporation; QUALITY CARE CONSULTANTS, LLC, a Nevada Limited Liability Company; DOE Individuals 1 through 10, and ROE Corporations 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:10-cv-00818 (JCM) (RJJ)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS ACTION PER FED. R. CIV. P. 23 [DOC 26]** |

This matter came before the Court on Plaintiff Charles Anthony Rader, Jr.'s Motion to Certify Class Action Per Federal Rule of Civil Procedure 23 [Doc. 26]. The Motion was fully briefed by the parties, and the Court heard oral arguments by counsel for the parties at a hearing on August 24, 2011. After a review and consideration of the briefs, authorities and the oral argument of counsel, the Court denies Plaintiff's Motion for the reasons that follow.

I.   **FINDINGS OF FACT**

1.   Plaintiff originally filed this putative class action lawsuit on February 26, 2010, with the Nevada District Court for Clark County. The Complaint asserts claims against Defendants, who are alleged to have manufactured or sold a generic anesthetic drug product, Propofol, that was allegedly administered to Plaintiff and other members of the putative class during endoscopic procedures they underwent at various times at two different facilities over a four-year period. The claims asserted all arise under Nevada state law and include: (1) strict product liability; (2) breach of the implied warranty of fitness for a particular purpose; (3) negligence; and (4) violation of the Nevada Deceptive Trade Practices Act.

2.   Defendants answered the Complaint on May 24, 2010 and then removed the case to this Court on May 28, 2010. [Doc. 1]

3.   Plaintiff also brought claims against Quality Care Consultants, which was dismissed from the case by stipulation entered on October 19, 2010. [Doc. 35]

4.   On September 27, 2010, Plaintiff moved to certify a class of "approximately 60,000" defined as:

> [a]ll patients who received anesthesia at the 'Endoscopy Center of Southern Nevada' on Shadow Lane or the 'Desert Shadow Endoscopy Center' (formerly known as the 'Endoscopy Center of Southern Nevada II') on Burnham Avenue between March 2004 and January 11, 2008.

5.   The essence of Plaintiff's claims is that he and other members of the putative class were "exposed to a risk of possible exposure to blood-borne pathogens due to unsafe injection practices" at the Endoscopy Center of Southern Nevada ("ECSN") and/or the Desert Shadow Endoscopy Center ("DSEC") (collectively, the "Clinics") because Teva Parenteral Medicines, Inc., formerly known as Sicor Pharmaceuticals, Inc. ("Teva"), Sicor, Inc. ("Sicor"), Baxter Healthcare

Corporation ("Baxter"), and McKesson Medical-Surgical Inc. ("McKesson") (collectively "Defendants") sold single-use vials of Propofol in sizes that were unreasonably dangerous for use in ambulatory surgical centers and failed to provide adequate warnings against multi-dosing with Propofol sold to the Clinics. Plaintiff alleges that, as a result of this exposure, he and other members of the putative class have had to undergo medical testing for blood-borne diseases including Hepatitis B and C and HIV. The Complaint seeks to recover both the cost of such testing and punitive damages.

  6. Although Plaintiff's class definition literally includes all former patients of the Clinics, Plaintiff's Motion states that he seeks to certify a class consisting only of "non-infected" claimants, *i.e.*, those who have been tested for blood-borne diseases and who have tested negative.

  7. The Complaint alleges that at some point after February 27, 2008, Plaintiff received from Southern Nevada Health District ("SNHD") a letter alerting him that he had been "placed at risk of possible exposure to bloodborne (sic) pathogens" and recommending that he be tested for Hepatitis B and C and HIV.

  8. SNHD sent similar notification letters to approximately 63,000 persons, all former patients of the Clinics. The letters explicitly told former patients of ECSN that "[i]t is not possible to determine specifically which people were exposed." Former patients of DSEC were informed that SNHD "cannot make a recommendation to get tested based on evidence of unsafe injection practices which may have exposed patients to the blood of other clinic patients," but counseled that "it is important for potentially affected patients to know their infected status."

  9. These letters resulted from an investigation of ECSN conducted in January 2008 by SNHD, working with personnel from the federal Centers for Disease Control and Prevention ("CDC"), in response to reports of several cases of acute Hepatitis C infection among former patients of ECSN.

  10. According to the Final Report of the SNHD regarding this investigation, the investigation focused on eight specific cases of infection allegedly arising from endoscopic procedures performed at ECSN on July 25, 2007 and September 21, 2007. SNHD concluded that, for the specific cases under investigation, it "believed" the transmission of Hepatitis C at ECSN was

2

the result of "a combination of unsafe injection practices[]" – and, more specifically, that "[t]he reuse of syringes to access vials could have introduced the blood of patients (and any viruses therein) into vials of propofol … and the vials were then used for subsequent patients, transmitting any contamination to those patients."  SNHD acknowledged, however, that it could make no conclusions about any Hepatitis cases other than those specifically under investigation, stating that the sources and causes of infection for other Clinic patients "cannot be confirmed, as other sources of infection cannot be conclusively ruled out."

11. The SNHD Report noted additionally that "each CRNA [certified registered nurse anesthetist] had their own technique for the administration of propofol."

12. An additional case of infection was determined as being "linked" to an endoscopic procedure that was performed at DSEC on June 14, 2006.  However, as SNHD stated in the notification letters that it sent to former patients of that Clinic, "there [was] not sufficient information . . . to determine the likely source of disease transmission" because "this case was reported to [SNHD] after the clinic location was closed and staff was not available for interviews with the [SNHD] and investigation team members were unable to further observe the clinic practices."

13. The above-referenced limitations of the SNHD's investigation and findings were recently confirmed during the deposition testimony of SNHD personnel, including lead investigator Brian Labus, in April 2011.

14. As Plaintiff's Motion acknowledges, this is not the first attempt to certify a class of "non-infected" former patients of the Clinics.  Another plaintiff previously filed a putative class action with the Nevada District Court, *Matter of Endoscopy Ctr. & Associated Bus. & Coordinated Cases*, No. A558091 (Dist. Ct. Nev.) ("*Cordero*"), seeking to certify a class virtually identical to the putative class in this case.  The plaintiff in the *Cordero* action sought to recover damages on a classwide basis for emotional distress and for the costs of Hepatitis and HIV testing obtained after learning of the Hepatitis outbreak at ECSN.

15. On November 18, 2008, the Nevada District Court denied class certification in the *Cordero* action, holding that the plaintiff had failed to establish commonality, typicality, and

superiority under the Nevada analogue to FED. R. CIV. P. 23(a) and (b)(3).  In particular, that court held that Nevada had not recognized a cause of action based on the alleged "need to be tested" for blood-borne disease, and declined to "create a cause of action and a damage claim without direction from the Nevada Supreme Court."  The court also specifically concluded that, even assuming that the medical testing claims were cognizable under Nevada law, such claims were inappropriate for class certification because testing costs varied widely between the putative class members:

> The cost of medical testing varies significantly between the putative class members. . . .  [D]iscovery depositions of twenty-nine putative Class members were taken and they demonstrate:  (1) some members received testing for free; (2) some testing was paid for by insurance coverage; (3) some was paid out-of-pocket; and (4) some was paid with a combination of insurance coverage and co-payments.

16. Additionally, the *Cordero* court found that the plaintiff had not established that "the injection procedures utilized [at the Clinics] and criticized by the Southern Nevada Health District and the Center for Disease Control were so pervasive, so wide spread, so repetitive and so commonly used as to subject a majority or even a significant percentage of the putative Class members" to unsafe injection practices.

17. The *Cordero* court also refused to certify the plaintiff's emotional distress claims, because "'emotional distress' is very difficult to quantify and varies so dramatically from person to person that it is the type of injury that is not capable of being adjudicated in a Class Action setting. . . .  These claims are, by nature, individualistic and individualized proof is required to establish them."

18. Plaintiff's Motion here states that he has "attempt[ed] to cure the defects cited by" the *Cordero* court by not seeking to recover damages for emotional distress.  Instead, as stated previously, Plaintiff seeks recovery for himself and putative class members only the costs of medical testing that were allegedly incurred as a result of potential exposure to blood-borne disease at the Clinics.

19. On February 25, 2011, approximately one year after filing the present action, Plaintiff filed with the bankruptcy court for this District a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code.  There is no indication in the record that the bankruptcy trustee has abandoned the claims asserted in Plaintiff's Complaint.

4

II.     CONCLUSIONS OF LAW

1.      Any class certified under Rule 23 of the Federal Rules of Civil Procedure must meet all of the requirements listed in Rule 23(a), *i.e.*, numerosity, commonality, typicality and adequacy of representation, and must also satisfy at least one of the conditions enumerated in Rule 23(b). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The failure to meet any of these requirements requires the denial of class certification. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508-09 (9th Cir. 1992). The burden of demonstrating that these requirements have been satisfied rests with Plaintiff, who "must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently common questions of law or facts, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Plaintiff may not rest on mere allegations: "Rule 23 does not set forth a mere pleading standard." *Id.*; *accord Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that all the requirements of Rule 23 are met. *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

2.      Here, Plaintiff seeks class certification based upon Rule 23(b)(3), which requires that the "questions of law or fact common to the class members predominate over any questions affecting only individual members" and that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

3.      As an initial matter, the Court concludes that Plaintiff's class cannot be certified because the scope of the proposed class is not adequately defined to meet the requirements of Rule 23. "Defining the class is 'of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action. The definition must be precise, objective, and presently ascertainable.'" *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 2:06-CV-00225, 2008 WL 3179315, at *20 (D. Nev. June 20, 2008) (quoting Ann. Manual For Complex Litig., § 21.222). "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines,*

5

*Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) (quoting 5 James W. Moore, MOORE'S FEDERAL PRACTICE § 23.21(3)(c) (2001)).

4. Plaintiff's proposed class definition runs afoul of these requirements. In order for this Court to determine whether a person is a member of the proposed class, it would have to make individualized determinations as to whether (1) the person was treated at the Clinics during the relevant time frame, (2) the person was administered Propofol manufactured and distributed by the Defendants, (3) the person received notification of the outbreak from SNHD, (4) the person was tested as a result, and (5) the results of such testing were negative. Because Plaintiff has "define[d] [the] class in such a way that class membership cannot be identified until the merits are resolved," class certification is inappropriate. *In re Wal-Mart*, 2008 WL 3179315, at *20.

5. The Court concludes also that Plaintiff has failed to satisfy the adequacy requirement of Rule 23(a)(4), which requires that he be able to "fairly and adequately protect the interests of all members of the class." That is because Plaintiff lacks standing to pursue the claims he seeks to assert on behalf of the class. As stated, Plaintiff filed for personal bankruptcy approximately one year after he filed the present class action complaint. Thus, his claims are the property of his bankruptcy estate, and only the bankruptcy trustee can bring, litigate, or settle causes of action that are property of the debtor's estate. *See Lopez v. Specialty Rests. Corp.*, 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002). "Because [Plaintiff] lacks standing to sue, [he] may not serve as a class representative." *Deloach v. Provident Health Servs., Inc.*, No. CV493-120, 1993 WL 850445, at *2 (S.D. Ga. Sept. 1, 1993).

6. Plaintiff is also an inadequate class representative for the independent reason that, in choosing to seek only the cost of medical testing rather than traditional damages for emotional distress, Plaintiff has created an insurmountable conflict between his own interests and that of the class he wishes to represent. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010). The class members here will be bound by any judgment and precluded from pursuing claims at a later date that could have been asserted in the class action. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 16.20 at 226 (4th ed. 2002) ("All members of the class … are bound by the judgment entered in the action under

[Rule 23]"). Plaintiff therefore cannot be allowed to represent a class where, as here, he has "opt[ed] to pursue certain claims on a classwide basis while jeopardizing the class members' ability to subsequently pursue other claims." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 668 (D. Kan. 2004). Because Plaintiff here seeks to "throw away" recovery for emotional distress damages that "could be a major component of [each class member's] recovery," he is not an adequate representative under Rule 23(a)(4) and thus certification is inappropriate. *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, No. 11-8003, 2011 U.S. App. LEXIS 6760, at *7 (7th Cir. Apr. 1, 2011).

7. Nor has Plaintiff has demonstrated that the class he seeks to represent satisfies Rule 23(b)(3), because individual issues predominate over issues common to the proposed class.

8. In particular, individual issues as to causation predominate over any common questions Plaintiff claims may exist. These include: whether each individual member of the proposed class was treated with Propofol; whether the Propofol was manufactured and distributed by the Product Defendants; the size of the Propofol vials used administered anesthetic to each proposed class member; whether the injection practices of the CRNA who treated each proposed class member actually exposed that class member to a blood-borne disease; and whether other clinic practices, including endoscope reprocessing, could have been a substantial factor putting each proposed class member at risk of exposure to blood-borne disease.

9. To warrant class certification in this case, Plaintiff must demonstrate that causation can be proved as to all class members using classwide proof, not mere unsupported assumptions and generalities. *See In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 145, 165 (2d Cir. 1987) ("The relevant question, therefore, is not whether [the product] has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom."); *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 547 (W.D. Wis. 1998) ("Plaintiffs cannot shortcut [the process of defining a proper class and determining commonality and predominance] by using otherwise legitimate characteristics to identify class members then asserting that all such individuals, by virtue of possessing these characteristics, are relieved from offering any specific proof on matters critical to the disposition of their claims.").

10. Here, Plaintiff has not shown that the causation issues discussed previously are amenable to classwide proof. Plaintiff's reliance on the contents of the SNHD Report and notification letters is misplaced. Rather, those documents show that (1) patients did not receive identical treatment; (2) "it was not possible to determine which individual patients might have been exposed to contaminated vials or equipment"; (3) letters were sent to former patients even where SNHD had not made any of the determinations necessary to establish causation in this case; (4) SNHD's findings are limited to nine infected patients who are not members of the putative class; and (5) SNHD conducted no investigation of and made no findings regarding the mode of transmission by which Hepatitis C or other blood-borne diseases may have been transmitted to patients at DSEC. Thus, these documents do not supply the type of classwide proof of causation needed to demonstrate that class action treatment under Rule 23(b)(3) is appropriate.

11. Additionally, individual issues predominate as to the putative class members' damages claims, which makes classwide treatment of those claims inappropriate.

12. Plaintiff argues that this is not the case because, unlike the claims at issue in the *Cordero* action, "this class is not alleging a 'fear of infection' claim," but instead seeks recovery for alleged economic damages caused by "potential exposure" to blood-borne diseases, namely the cost of medical testing that the class members allegedly were required to undergo.

13. The Court is not persuaded. As an initial matter, Nevada does not recognize any freestanding claim for damages based solely on the "need to be tested" for the presence of blood-borne viruses. Indeed, as the court in the *Cordero* action held, "Nevada has never recognized a damage claim in this regard." As a matter of comity between federal and state courts, this Court, like the *Cordero* court, "declines to create a cause of action and a damage claim" based on the "need to be tested" "without direction from the Nevada Supreme Court."

14. The only difference between the claims asserted here and traditional claims for emotional distress is the remedy that is sought: instead of damages, Plaintiff seeks an award of monetary relief in order to cover the cost of medical testing that the class members allegedly must incur. Here, as in more traditional emotional distress cases, the harm for which Plaintiff seeks recovery is indeed the "fear of infection" with a blood-borne disease, which allegedly has

8

necessitated Plaintiff and the other members of the putative class to incur the costs of medical testing.

15.  The emotional distress claims of the thousands of proposed class members defeat class certification in this case because emotional distress is necessarily an individualized inquiry, and the amount of damages in such cases "is not susceptible to a mathematical or formulaic calculation." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003).  Rather, "the plaintiffs' damage claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,'" and thus "the potential exists that the class action may degenerate in practice into multiple lawsuits separately tried.'"  *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744-45 (5th Cir. 2003) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998), and *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.19 (5th Cir. 1996)).  Allowing this case to proceed as a class action would therefore not be appropriate.

### III.  CONCLUSION

For all of the foregoing reasons, a class action is not a superior method to adjudicate this controversy and the requirements of Rule 23 have not been met.  Plaintiff's motion to certify a class is denied.

**It is So Ordered.**

Dated:  October 5, 2011

_____
UNITED STATES DISTRICT JUDGE